UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUNLIGHT FINANCIAL LLC, et al.,

Plaintiffs,

-against-

SAMUEL DUNCAN HINKLE, et al.,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/07/2022
```

21-CV-6680 (JMF) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Sunlight Financial, LLC and Sunlight Financial Holdings, Inc. (together, Sunlight) filed this action on August 6, 2021, alleging that defendant Duncan Hinkle, a former Sunlight executive, stole confidential Sunlight information for the benefit of defendant Sunstone Credit, Inc. (Sunstone), a competing solar financing business where Hinkle now works. The parties negotiated, and on August 27, 2021 the Court so-ordered, a Stipulated Amended Preliminary Injunction Order (PI Order) (Dkt. 35) that – as relevant here – requires Sunstone's employees to submit all of their electronic devices, accounts, and other data storage systems (Sources) containing Sunlight's non-public documents or information derived therefrom (Sunlight Material) to a forensic expert (the Expert) for review. PI Order ¶¶ 1(a)-(b). The Expert is tasked with locating Sunlight Material on the Sources, preserving relevant forensic evidence concerning that material, and "returning the Sunlight Material to Sunlight." *Id*. ¶ 1(b).

Now before the Court is plaintiff's June 7, 2022 letter-motion (Pl. Mtn.) (Dkt. 70), seeking an order compelling Sunstone and its employee Scott Muckleroy to comply with the PI Order by turning over to the Expert a personal Google drive and laptop computer belonging to Muckleroy. Although Muckleroy is clearly subject to the PI Order, and although both his drive (the Muckleroy Drive) and his laptop (the Muckleroy Laptop) fall squarely within the PI Order's definition of "Sources," Sunstone has resisted turning them over, on the ground that the Sunlight-related

documents on the drive and the laptop were lawfully obtained or created by Muckleroy in the course of his consulting work for nonparty Hudson Sustainable Group LLC (Hudson), which is a "significant investor" in Sunlight and, in that capacity, retained Muckleroy to analyze and assess its Sunlight investment. Def. Ltr. dated June 10, 2022 (Def. Opp. Ltr.) (Dkt. 71) at 1. Both Sunstone and Hudson argue that Muckleroy's Sunlight-related documents, which were collected in a "dedicated folder" on the Muckleroy Drive (the Sunlight Folder), are proprietary to Hudson; that some of them are confidential "Hudson-authored work product" analyzing Hudson's investment in Sunlight, which it would be "inappropriate" for Sunlight to see; and consequently that the Sunlight Folder should not be turned over to the Expert. *Id.* at 2, 4; Def. Ltr. dated June 23, 2022 (Def. June 23 Update Ltr.) (Dkt. 72) at 1-2; Hudson Ltr. dated Aug. 4, 2022 (Hudson Ltr.) (Dkt. 82) at 2-4.

Complicating the picture further is the fact that Sunstone – without seeking or obtaining plaintiff's consent or leave of the Court – unilaterally permitted Hudson to remove the Sunlight Folder from the Muckleroy Drive. Def. June 23 Update Ltr. at 2. Since then, Sunstone has provided the remainder of the Muckleroy Drive to the Expert, *see* Def. Ltr. dated July 21, 2022 (Def. July 21 Update Ltr.) (Dkt. 77) at 1, but says it "cannot" produce the Sunlight Folder because it no longer possesses that folder or its contents. Def. June 23 Update Ltr. at 2. The Muckleroy Laptop, while apparently still intact, has been withheld from the Expert entirely because "Mr. Muckleroy used his laptop in connection with his work for Hudson, implicating Hudson's same objections." *Id.*; *see also* Def. July 21 Update Ltr. at 1.

For the reasons that follow, Sunlight's motion will be granted to the extent that Sunstone and Muckleroy will be required to turn over the remainder of the Muckleroy Drive and the entire Muckleroy Laptop to the Expert, in compliance with the plain terms of the PI Order. If they cannot

produce the Sunlight Folder (or arrange for its production by Hudson), Sunlight may seek sanctions against them pursuant to Fed. R. Civ. P. 16(b), 37(b), and/or 37(e).[1]

## I.   BACKGROUND

### A.   Plaintiff's Claims

According to Sunlight, defendant Hinkle co-founded and was secretly working on behalf of defendant Sunstone for at least four months – from April through July 2021 – while still on the Sunlight payroll. Compl. (Dkt. 1) ¶¶ 2, 69. During that period, Hinkle allegedly misappropriated confidential, proprietary, and trade secret information belonging to Sunlight, *id.* ¶¶ 2-5, 45, 71-73, 99, and used that information unlawfully "to compete with Sunlight in the solar financing industry," giving Sunstone an unfair competitive advantage. *Id.* ¶ 100. The Complaint alleges that Hinkle's secret work for Sunstone and misappropriation of Sunlight's confidential, proprietary, and trade secret information violated various contractual, statutory, and common-law duties owed to Sunlight, and that Sunstone aided and abetted his misconduct. *Id.* ¶¶ 80-176.

### B.   The PI Order

On August 17, 2021, Sunlight filed a motion for a temporary restraining order and preliminary injunction. (Dkt. 15.) At the urging of the Hon. Alison J. Nathan, United States District Judge (Dkt. 23), the parties negotiated an initial stipulated preliminary injunction, which the Court

---

[1] In the PI Order, the parties specified that any disputes concerning its operative provisions "shall be addressed to the Court in the form of Letter Motions and following the procedure applied to discovery disputes." PI Order ¶ 1(d). For this reason, and because no party has sought dispositive relief or contempt sanctions, I consider the present dispute to be within my reference for general pretrial management (Dkt. 42), and therefore within my authority to "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). In the event the District Judge disagrees as to scope of my authority, I recommend, respectfully, that Sunstone and Muckleroy be compelled to turn over the Muckleroy Drive and the Muckleroy Laptop to the Expert, on pain of sanctions.

so-ordered on August 24, 2021 (Dkt. 32), followed by the present PI Order, which the Court so-ordered three days later.

The PI Order applies to defendants and their "directors, officers, agents, servants, and employees," referred to therein as "Enjoined Parties." PI Order at 2. The Enjoined Parties are required to "return" to Sunlight all "Sunlight Material," defined broadly as "any of Sunlight's non-public documents, materials, business information and other media, *including Sunlight's non-public information incorporated into other documents and files*, that were created, saved, accessed, used, or modified after January 1, 2020 . . . without regard to whether Defendants believe that the Sunlight Material contains confidential, proprietary, or trade secret information." *Id*. ¶ 1 (emphasis added). With respect to material in electronically stored information, the Expert is tasked with "locating Sunlight Material, preserving all forensic information and evidence relating to the same (including metadata), returning the Sunlight Material to Sunlight, providing a copy of all identified Sunlight Material to [the parties' counsel of record] for purposes of this Action only and on an Attorney's Eyes Only [AEO] basis relative to Defendants, and otherwise removing Sunlight Material from Defendants' possession." *Id*. ¶ 1(b).[2] If the Expert identifies "non-Sunlight files containing Sunlight Material," the PI Order permits defendants' counsel to review those files, redact for privilege, and, if warranted, designate them AEO as to Sunlight. *Id*. ¶ 1(c). Instead of "returning" those files to Sunlight itself, the Expert is to provide them, in redacted form, to Sunlight's counsel on an AEO basis.

As the first step in the process, defendants were required to provide the Expert with a list of, and access to, all "Sources," defined to include "each electronic device, network/system, cloud-

---

[2] The PI Order does not name the Expert, but the parties' correspondence identifies the firm of Stroz Friedberg (Stroz) in that role. *See* Def. July 21 Update Ltr. at 1.

based storage, email account, and any other account or data storage system currently or previously in the Enjoined Parties' possession or control in which Sunlight Materials are currently stored, may currently be stored, or were previously stored," including but not limited to Hinkle's personal computers, smartphone, and accounts, and any other "personal or Sunstone Credit" device, data storage site, portal, or email account. PI Order ¶ 1(b)(ii).

Defendants' time to answer or move against the Complaint, as well as the commencement of ordinary discovery, is stayed until the Expert Review process is completed. PI Order ¶¶ 2, 8-9.

### C.      The Chang Carve-Out

Sunlight was founded in 2014 by employees of Hudson, including nonparty Wilson Chang. Compl. ¶ 13; Declaration of Neil Auerbach (Auerbach Decl.) (Dkt. 82-1) ¶ 2. Chang was a Sunlight director until July 9, 2021. Compl. ¶ 13. He remains a partner and senior executive of Hudson. *See The Hudson Team,* Hudson Sustainable Group, https://www.hudsonsustainable.com/the-team/ (last visited Dec. 7, 2022). Hudson no longer controls Sunlight but still holds a significant ownership stake in the company. Def. Opp. Ltr. at 1; Auerbach Decl. ¶ 2.[3] Chang is also a co-founder of and personal investor in defendant Sunstone. Compl. ¶ 69; Def. Opp. Ltr. at 1.[4] Chang is mentioned frequently in the Complaint but is not accused of personal wrongdoing.

During the negotiations over the PI Order, defendants informed plaintiff that "as a result of his employment by Hudson," Chang had "in his possession" (including on a computer and in a cloud storage account) various "Hudson-owned documents with Sunlight information," which in defendants' and Hudson's view merited exceptional treatment. Def. Opp. Ltr. at 2. Plaintiff agreed.

---

[3] According to defendant's counsel, Hudson's ownership stake in Sunlight is "over five percent." Tr. of July 21, 2022 Conf. (July 21 Tr.) (Dkt. 85), at 23:5-10.

[4] Hudson itself has "no ownership relationship with Sunstone whatsoever." Auerbach Decl. ¶ 12.

*Id.* As a result, the PI Order excludes from the Expert Review "non-Sunstone Credit Sources owned or operated by Wilson Chang (the 'Chang Sources')." PI Order ¶ 1(b)(iii).[5]

### D.    The Dispute

Scott Muckleroy co-founded defendant Sunstone, along with Chang, Hinkle, and others, and now serves as its Vice President of Finance. *See* Pl. Mtn. at 1; *Meet the Leadership Team*, Sunstone Credit, https://www.sunstonecredit.com/about (last visited Dec. 7, 2022). Thus, Muckleroy is an Enjoined Party as that term is used in the PI Order. However, neither the Muckleroy Drive nor the Muckleroy Laptop was originally identified as a Source pursuant to the PI Order. Nor were they carved out of the PI Order, as the Chang Sources were.

In early 2022, while reviewing Sunlight Material found on the disclosed Sources, Stroz reported that on June 16, 2021, Muckleroy sent a Sunlight PowerPoint presentation (the Sunlight PowerPoint), in the form of a pdf file, to another Sunstone employee, Jenny Fu, through Sunstone's Slack messaging application. Pl. Mtn. at 2. The Sunlight PowerPoint was a non-public draft version of an investor presentation prepared by Sunlight in advance of a going-public transaction that closed on July 9, 2021, and was marked "confidential and proprietary." *Id.*

Initially, Stroz could not determine where the Sunlight PowerPoint had come from, that is, where it was stored before Muckleroy attached it to a Slack message and sent it to Fu. Pl. Mtn. at 2. Sunstone then disclosed that the Sunlight PowerPoint was stored on the Muckleroy Drive, in a "dedicated folder," and was transferred to Fu via the Muckleroy Laptop. Pl. Mtn. at 3; Def. Opp. Ltr. at 3. Sunstone further explained that Muckleroy "was previously a consultant" for Hudson and

---

[5] The PI Order goes on to state that it does not "prevent plaintiffs from seeking discovery of the Chang Sources by other means in this action." PI Order ¶ 1(b)(ii). On September 15, 2021, I permitted Sunlight to serve subpoenas on Chang and Hudson. (Dkt. 52.) On January 18, 2022, Chang sued Sunlight in Delaware Chancery Court, seeking advancement of his legal fees incurred in this action.  *See* Pl. Ltr. dated March 11, 2022 (Dkt. 66), at 2, 4.

received the Sunlight PowerPoint "in connection with that work." Def. Opp. Ltr., Ex. A (Dkt. 71-1), at 4 (March 25, 2022 email from defendants' attorney). In a later email communications, Sunstone reported that Muckleroy had a total of 50-100 Sunlight-related documents in the dedicated folder, including "highly confidential analyses regarding Sunlight's business affairs," some performed by Muckleroy himself. *Id*. at 3-4 (May 25, 2022 email from defendants' attorney; June 2, 2022 email from plaintiff's attorney). Defendants refused to produce the Muckleroy Drive to the Expert, arguing that notwithstanding the PI Order, they had "no legal right or ability to produce any of Mr. Muckleroy's Hudson materials," including Sunlight-related documents that Muckleroy obtained or prepared with his Hudson hat on. *Id*. at 2. Plaintiff disagreed, but stated that it would "work with Hudson to see if [they could] come up with a solution." *Id*.

Thereafter – apparently while plaintiff was negotiating, unsuccessfully, with Hudson – Sunstone "arranged for Hudson and their IT firm to make a forensic copy of the entirety of Muckleroy's personal Drive account," so that Hudson could "retrieve and remove all Hudson documents from the same." Def. Opp. Ltr. at 3. Upon learning this, Sunlight asked Hudson for the Muckleroy Drive. Pl. Ltr. at 3. Hudson confirmed that a dedicated folder on that drive contained "over 100 files," but declined Sunlight's request. *Id*. Sunlight then went back to Sunstone, "only to be told that it had destroyed the aforementioned files despite the PI Order and Hudson retained the only forensic copy of its contents." *Id*. Stymied, Sunlight now asks the Court for an order (i) directing Sunstone "and/or Hudson" to provide the "entire contents" of the Muckleroy Drive to the Expert, and (ii) directing Muckleroy and Fu to provide "the electronic devices that they used" to send and receive the Sunlight PowerPoint on June 16, 2021. *Id*.[6]

---

[6] Muckleroy used the Muckleroy Laptop. Fu used her Sunstone laptop, which has since been turned over to the Expert. *See* Def. June 23 Update Ltr. at 2; Def. July 21 Update Ltr. at 1. Consequently, the portion of the motion concerning Fu's Sunstone laptop is moot.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the Muckleroy Drive and the Muckleroy Laptop are Sources, as that term in used in the PI Order; that the Sunlight PowerPoint (as well as the other documents in the Sunlight Folder) constitute Sunlight Material, as that term is used in the PI Order; and therefore that "the plain language of the PI Order requires Sunstone Credit to turn [the Muckleroy Drive] over to the parties' third-party expert." Pl. Mtn. at 1. When defendants instead "transferred those files to a third-party not covered by the PI Order and then deleted them from the [Muckleroy Drive]," they "violated the PI Order and deprive[d] Sunlight of critical examination of what exactly Defendants did with those 100+ files." *Id*.

Defendants initially argued that neither the Muckleroy Drive nor the Muckleroy Laptop is a Source, drawing a distinction (found nowhere in the PI Order) between devices and accounts owned by Sunlight and those "owned by Muckleroy in his personal capacity" and containing documents "provided to or created by Muckleroy in his capacity as an independent contractor [for Hudson], which is distinct from his work for Sunstone." Def. Opp. Ltr. at 4. Thereafter, as noted above, defendants agreed to provide the Expert with "a forensic image of the current contents of Mr. Muckleroy's Google Drive," Def. June 23 Update Ltr. at 1. Defendants acknowledge that the "current contents" of the Muckleroy Drive do not include the files removed by Hudson, *id*. at 1-2, but reason that they could not have been required to produce those files in any event because "Defendants have no legal right to them." *Id*. at 2.

As for the Muckleroy Laptop, defendants explain that they could not turn it over to the Expert because Muckleroy used it "in connection with his work for Hudson, implicating Hudson's same objections." Def. Update Ltr. at 2. Instead, defendants offer to provide the laptop to Hudson's IT vendor, which would "make a forensic copy for preservation purposes, remove Hudson's

proprietary files from the laptop, and then provide the laptop to the Expert for imaging." *Id*. Thereafter, defendants say, Sunlight "should subpoena Hudson for relevant documents," as it did with respect the Chang Sources, and Hudson "should provide responsive documents not including its work product." Def. Opp. Ltr. at 4.

## III.    THE JULY 21 CONFERENCE AND ORDER

During a telephonic conference on July 21, 2022, defendants conceded that Muckleroy is an Enjoined Party, and that the Muckleroy Drive and Muckleroy Laptop are Sources, as those terms are defined in the PI Order. *See* July 21 Tr. at 21:16, 30:5. However, they continued to resist the relief sought by plaintiff, arguing that "there are limits on what we are able to do," *id*. at 30:12-13, in light of Hudson's position that it – rather than Muckleroy or Sunstone – has the legal right to control any files that Muckleroy received or created in his capacity as a Hudson consultant. Since this was, in my view, "the nub of the problem here," *id*. at 19:15-16, I adjourned the conference and issued an order:

(1)    finding that Muckleroy is an Enjoined Party,

(2)    finding that the Muckleroy Drive and Laptop contain or contained Sunlight Material, and therefore that each is a Source,

(3)    concluding that, "under the express terms of the PI Order, defendants are obligated to provide the Expert with access to these Sources," but

(4)    deferring decision on plaintiff's motion until the Court "heard from Hudson or Muckleroy directly," and setting a schedule for them to submit letter-briefs if they wished to do so.

Order dated July 21, 2022 (July 21 Order) (Dkt. 76) at 1-2.  Thereafter, Muckleroy declined to "interpose any objections he may have to providing [the Expert] with access to his personal Google drive and personal laptop." Def. July 21 Update Ltr. at 1.

## IV.    HUDSON'S POSITION

Hudson's letter-brief, supported by the Auerbach Declaration, urges the Court to deny Sunlight's motion and instead "order Sunlight to subpoena Hudson for Hudson proprietary materials in Muckleroy's personal possession." Hudson Ltr. at 4. At that point, Hudson says, it will produce all "Sunlight documents and related emails in Muckleroy's possession through his work for Hudson" – but not "Hudson's analysis and work product," which is "highly confidential and proprietary." *Id*. at 1.[7]

Hudson does not dispute that documents constituting or revealing its "work product" also constitute Sunlight Material, as that term is used in the PI Order. Hudson Ltr. at 1; PI Order ¶ 1. Nor does it dispute that the Muckleroy Drive and the Muckleroy Laptop are Sources, as that term in used in the PI Order. *Id.* Rather, Hudson complains that it was not consulted when the parties negotiated the "overbroad" PI Order, *id*. at 4, and states that it "would have objected to the order as applied to Hudson property, especially internal analysis and work product." *Id.*[8]

---

[7] Hudson explains that Muckleroy worked for Hudson as a contractor, retained through "a temporary employee sourcing firm," and that in that capacity he "received Hudson documents" (presumably including the Sunlight PowerPoint, prepared by Sunlight and sent to Hudson because Hudson was a Sunlight investor) "and performed analyses at the instruction of Chang exclusively as an agent for Hudson." Hudson Ltr. at 2; Auerbach Decl. ¶¶ 5, 9-10. Hudson asserts that although the documents are (or were) in Muckleroy's "possession," his consulting contract made it clear that all documents provided to him by Hudson, and all work he performed for Hudson, remained Hudson's "property." Hudson Ltr. at 2; *see also* Auerbach Decl. Ex. A ("Sourced Talent Agreement" between Hudson and Toptal, LLC for Muckleroy's services) ¶¶ 1, 7-8.

[8] Hudson's claim that it had "no knowledge" of the terms of the PI Order when it was entered, and thus "no chance to apprise the Court of its concerns" until now, Hudson Ltr. at 1, 4, is not credible. Wilson Chang, a Hudson partner and senior executive with close ties to both Sunlight and Sunstone, "informed Hudson that the case had been filed," Hudson Ltr. at 3, and was then heavily involved, through his counsel, in negotiating the Chang carve-out to the PI Order – for the express purpose of protecting *Hudson's* interests in documents that would otherwise be subject to the Expert Review. *Id*. at 3-4. It would be odd, under these circumstances, if Chang neglected to inform Hudson of the result of those negotiations and provide it with a copy of the PI Order as stipulated by the parties and so-ordered by the Court. Even if Chang inexplicably failed to do either of those things, Hudson could easily have obtained a copy from this Court's public docket, and surely had

Hudson's objections are threefold. First, it explains that it has a "strong proprietary interest in the documents at issue," particularly those revealing the "highly sensitive work that Muckleroy performed for Hudson regarding its investment in Sunlight," and argues that they should be subject to a "separate procedure" (like the Chang carve-out) rather than the Expert Review called for by the PI Order as written. Hudson Ltr. at 1-2.[9] Second, Hudson argues that the PI Order "does not reach" its proprietary documents because, although Muckleroy possessed those documents, he did not possess them "by virtue of [his] Sunstone employment[.]" *Id*. at 2. Third, according to Hudson, defendant Sunstone cannot be made to produce the documents in question pursuant to Fed. R. Civ. P. 34 because, although they are (or were) in Muckleroy's possession, they were never "in the 'possession, custody, or control' of the <u>party</u> from whom which discovery is sought – that is, Sunstone." *Id*. at 3 (emphasis in the original).

## V.     DISCUSSION

Although Hudson accepted the Court's invitation to submit a letter-brief, and complains about the terms of the PI Order as written, it has not moved to modify or amend that PI Order.[10] Nor, for that matter, have defendants made such a motion. Rather, they ask that their failure to comply with the PI Order be excused because they "did not have the authority to include any of

---

reason to do so – if not immediately, then a few weeks later, when Sunlight obtained leave to serve Hudson and Chang with subpoenas. *See* Order dated Sept. 15, 2021 (Dkt. 52).

[9] Paragraph 1(c) of the PI Order, which permits defendants to redact "non-Sunlight files containing Sunlight information" for privilege, and designate them AEO before providing them to Sunlight's lawyers, does not provide sufficient protection for Hudson, it says, because "Hudson's internal analyses and actions as to its investment in Sunlight are particularly confidential viz. Sunlight." Hudson Ltr. at 4.

[10] Before it could make such a motion, Hudson would be required to intervene pursuant to Fed. R. Civ. P. 24. *See, e.g.*, *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 200 (E.D.N.Y. 2016) ("without intervention, the [nonparty] Claimants lack a procedural avenue to amend the Preliminary Injunction Order"). It has made no effort to do so.

Muckleroy's Hudson documents in the [Expert] Review." Def. Opp. Ltr. at 2; *see also id.* at 4 ("Defendants have no right to access or control the Drive or its contents"). Thus, the questions presented by Sunlight's motion are relatively narrow. First, the Court must determine whether the PI Order, as written, requires Sunstone or its employee Muckleroy to provide the Muckleroy Drive and the Muckleroy Laptop to the Expert for review. If so, the Court must determine whether they were unable to comply with the PI Order because they lacked the legal authority to turn over what Hudson describes as its proprietary documents without Hudson's permission.

### A.        The Requirements of the PI Order

The answer to the first question is clearly "yes." Sunstone is a party to this action, bound by all court orders entered herein. Both Sunstone and Muckleroy are Enjoined Parties, as that term is used in the PI Order. The Sunlight PowerPoint constitutes Sunlight Material, as that term is used in the PI Order, because it is (or was) a non-public document containing Sunlight's business information that was created by Sunlight and saved, accessed, and used by Muckleroy after January 1, 2020. Defendants' contention that there are only "small differences" between the draft Sunlight PowerPoint and a final version later made publicly available, *see* Def. Opp. Ltr. at 1 n.2, does not bear on this threshold inquiry. *See* PI Order ¶ 1 (defendants must return all qualifying documents "without regard to whether Defendants believe that the Sunlight Material contains confidential, proprietary, or trade secret information"). Documents created by Muckleroy (or by others) that "incorporate" Sunlight's non-public information are also considered Sunlight Material if they are within the "possession, custody, or control" of any Enjoined Party. *Id*.

Hudson's contention that the PI Order does not "properly reach Hudson proprietary materials that are not within the possession, custody or control of *Sunstone*," Hudson Ltr. at 1 (emphasis added), ignores the express language of the PI Order itself and must therefore be

rejected. Nor is there any requirement in the PI Order that the Sunlight Material have come into an Enjoined Party's possession by virtue of his "Sunstone employment." Hudson Ltr. at 2. To the contrary: the PI Order clearly reaches documents that came into defendant Hinkle's possession by virtue of his *Sunlight* employment, and just as clearly would reach documents that came into Chang's possession by virtue of his *Hudson* employment but for the Chang carve-out. *See* PI Order ¶ 1(b)(iii).

Because the Sunlight PowerPoint was stored on the Muckleroy Drive and forwarded via the Muckleroy Laptop, the drive and the laptop are Sources, as that term is used the PI Order, and therefore subject to the Expert Review. *See* PI Order ¶ 1(b)(ii) ("each electronic device, network/system, cloud-based storage, e-mail account, and any other account or data storage system currently or previously in the Enjoined Parties' possession or control in which Sunlight Materials are currently stored, may currently be stored, or were previously stored" is a Source, to which the Expert must be given access). It is entirely irrelevant, for this purpose, that the drive and the laptop are personal to Muckleroy rather than having been created or issued to him by Sunstone. *See id.* (expressly including, within the definition of Source, Hinkle's "personal computer, laptop, smartphone, and any other personal or Sunstone Credit device or laptop, online messaging or data storage site or portal . . . ").

In short, "under the express terms of the PI Order," Sunstone and Muckleroy "are obligated to provide the Expert with access to these Sources." July 21 Order at 1.

### B.      Ability to Comply

"Inability to comply with the court's order" is a defense to discovery sanctions and contempt citations alike. *See Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, 2004 WL 1125659, at *9 (S.D.N.Y. May 20, 2004) (discovery sanctions); *Garpeg, Ltd. v. U.S.*, 588 F. Supp. 1240, 1242

(S.D.N.Y. July 10, 1984) (civil contempt). However, to prevail on an "inability" defense, a party subject to a court order "must prove 'clearly, plainly and unmistakably' that 'compliance is impossible.'" *City of New York v. Golden Feather Smoke Shop, Inc.*, 2010 WL 2653369, at *7 (E.D.N.Y. June 25, 2010) (quoting *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir. 1995)). Compliance "must be beyond the realm of possibility, not just difficult to achieve[.]" *Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003). "A classic application of the factual impossibility defense arises when a court orders an individual to produce documents that are not in his possession or control." *Badgley v. Santacroce*, 800 F.2d 33, 37 (2d Cir. 1986). By contrast, when a court orders the production of documents that *are* within the subject's possession or control, compliance is required even if it puts the subject at legal risk elsewhere.[11]

The impossibility defense does not apply here. Notwithstanding Hudson's "proprietary interest" in certain documents within the Muckleroy Drive and the Muckleroy Laptop, Hudson Ltr. at 1, it is undisputed that Muckleroy had possession, custody, and physical control over both Sources and all of their contents. He also had a legal obligation, as an Enjoined Party, to provide those Sources to the Expert for review, and has expressly declined to "interpose any objections he may have to providing Stroz Friedberg with access to his personal Google drive and personal laptop." Def. July 21 Update Ltr. at 1.

---

[11] *See Garpeg*, 588 F. Supp. at 1243 (finding Chase in civil contempt of an order enforcing an IRS summons for documents, notwithstanding that compliance would put Chase at risk of being held in contempt of a contrary foreign injunction); *Ssangyong*, 2004 WL 1125659, at *13 (holding that plaintiff was entitled to enforce a document subpoena against Shanghai Commercial Bank in New York, notwithstanding the bank's claim that documents were located in its Hong Kong headquarters and that compliance would violate Hong Kong's banking secrecy laws); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 616 (S.D.N.Y. 2008) ("a foreign court order prohibiting compliance with this Court's order does not make compliance impossible"), *aff'd*, 351 F. App'x 467 (2d Cir. 2009).

Sunstone was similarly obligated to provide both Sources to the Expert. When determining whether an employer may be required to produce documents in the possession of its employee, the courts ask whether the employer has "access and the practical ability" to obtain the documents, in which case production pursuant to Fed. R. Civ. P. 34 "may be required." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *see also Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control'"). On this basis, "[n]umerous courts have found that corporations have control over their officers and employees and that corporations may be required to produce documents in their possession." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *6 (S.D.N.Y. Sept. 27, 2016) (quoting *Miniace v. Pac. Mar. Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006)) (collecting cases).

In this case, Sunstone's practical control over the Muckleroy Drive is clear from the undisputed fact that it was Sunstone, not Muckleroy, that "arranged for Hudson and their IT firm to make a forensic copy of the entirety of Muckleroy's personal Drive account [and] retrieve and remove all Hudson documents from the same[.]" Def. Opp. Ltr. at 3. Further, it was Sunstone, not Muckleroy, that "destroyed the aforementioned files," such that "Hudson retained the only forensic copy of its contents." Pl. Ltr. at 3.

I therefore conclude that both Sunstone and Muckleroy could have complied with the PI Order, but chose not to. Further, by turning the Muckleroy Drive over to non-party Hudson – so that Hudson could remove the Sunlight Folder – Sunstone risked a variety of sanctions. *See, e.g.*, Fed. R. Civ. P. 16(f), 37(b)(2), 37(e).

The Court is not unsympathetic to Hudson's desire that its "work product" – that is, documents that Muckleroy or other Hudson personnel created in order to analyze Hudson's

Sunlight investment – not be provided to Sunlight itself (or even its lawyers, on an AEO basis). However, Hudson is at least partially responsible for its own plight. It permitted Muckleroy to retain custody of "over 100" Sunlight-related files in his personal Google drive, *see* Pl. Ltr. at 3, even after he became a full-time Sunstone employee subject to the PI Order.[12] Moreover, although Hudson is represented by sophisticated counsel, it has made no effort to intervene in this action for the purpose of narrowing or otherwise modifying the PI Order to protect what it describes as its work product. Nor, of course, has it submitted any of that work product to the Expert (or the Court) to confirm its claim as to the character and provenance of the files in the Sunlight Folder.

## VI.   CONCLUSION

Nothing in the record now before the Court suggests that Sunstone and Muckleroy – both of whom are Enjoined Parties – were genuinely unable (as opposed to unwilling) to comply with the PI Order as written. Consequently, Sunlight's motion is GRANTED to the extent that Sunstone and Muckleroy must, no later than one week from the date of this Order, provide the Expert with access to the remainder of the Muckleroy Drive (that is, the Sunlight Folder) and the Muckleroy Laptop in accordance with ¶ 1(b)(iii) of the PI Order, so that the Expert can proceed with the agreed-upon review process with respect to their contents.[13] If they are unable to reacquire the Sunlight Folder from Hudson for this purpose, Sunlight may seek sanctions against them. *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 U.S. Dist. LEXIS 128189, at *18-

---

[12] Auerbach attests that he did not "know that Muckleroy possessed Hudson property" at the outset of this action, Auerbach Decl. ¶ 11, but not does state when he became aware of that fact – and conspicuously does not claim that Muckleroy was violating any obligation to Hudson by keeping the Sunlight Folder on his personal Google drive. Sunstone's counsel made that claim at one point, *see* Def. Opp. Ltr. Ex. B, at ECF p. 4 (Muckleroy "retained a quantity of Hudson documents illegally"), but later retracted it. *Id*. at ECF p. 2.

[13] Because Hudson is neither a party nor an Enjoined Party, the Court's order does not run directly against Hudson.

*20 (S.D.N.Y. May 15, 2018) (directing plaintiff Royal Park to produce documents that it had left in the custody of its assignor on pain of sanctions, notwithstanding that it was the assignor, rather than Royal Park itself, that "willfully refused" to supply the required documents); *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 508 (S.D.N.Y. 2005) (directing plaintiff JP Morgan to produce discovery in the physical possession of nonparties and authorizing defendants to seek discovery sanctions if JP Morgan failed to do so "within a reasonable time").

Nothing in this Order prevents defendants – or Hudson, should it successfully intervene – from moving to modify the PI Order with respect to the treatment of the Sunlight Material on the Muckleroy Drive and the Muckleroy Laptop once those Sources have been provided to the Expert as required.

Dated:   New York, New York
         December 7, 2022

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**